## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## COLUMBUS, OHIO

| | | |
|---|---|---|
| In Re: | * | Case No. 04-60904 |
| | | Chapter 7 (Converted) |
| Columbus Microfilm Inc. | * | Judge Kathryn Preston |
| Debtor | * | |

_____

**AMENDED
MOTION TO REOPEN CASE TO ADMINISTER
ESTATE ASSETS AND ACCORD RELIEF PURSUANT
TO 11 USC 350(b) WITH MEMORANDUM AND
EXHIBITS IN SUPPORT**

_____

Now comes, Angela R. Granata, a party-in-interest, ("the Movant"), by and through undersigned counsel, and would move this Court for an order, pursuant to 11 U.S.C. § 350(b) and Bankruptcy Rule 5010 and Local Rule 5010-1(a), to reopen this case for the purpose of administering estate assets of the Debtor.

The unscheduled and unadministered assets at issue in this case concern the following property:

(1)    a land contract and condominium interest at 5680 Canehill Lane, Hillard, Ohio "the Condominium");

(2)    possible claims against the Receiver or other recipients or individuals for matters including, but not necessarily limited to the retention and/or disposition of Estate funds or assets ("the Condominium") in contravention of 11 USC § 543(a);

(3)    any other possible claims of the Debtor.[1]

(Collectively referred to as the "Assets").

_____

[1] The case was closed without collection of a claim against Debtor's former counsel (See Page 63 of Exhibit 8 to Doc. No. 294) and also possible other unscheduled and unadministered claims as set forth herein.

In support of this Motion, the Movant would submit the following Memorandum and Appendix of Exhibits. The Movant would also request, to the extent the Court deems it necessary, to have a hearing scheduled on this matter.

**WHEREFORE**, the Movant requests that this case be reopened pursuant to 11 U.S.C. § 350(b) and Bankruptcy Rule 5010, that the Assets be the subject of administration and for such other relief as the Court may deem just and equitable.

Respectfully submitted

DILLER & RICE, LLC

/s/Steven L. Diller
Steven L. Diller (0023320)
Attorneys for Movant
124 East Main Street
Van Wert, OH 45891
Telephone: (419) 238-5025
Facsimile: (419) 238-4705
steven@drlawllc.com

## MEMORANDUM

**A. Introduction and Background.**

The Debtor, Columbus Microfilm Inc. ("Debtor"), was formed in 1948, and conducted its business operations in Columbus, Ohio. On March 5, 2004, Reg Martin was appointed as Receiver ("the Receiver") by the Franklin County Common Pleas Court ("the State Court") at the request of Unizan Bank[2] to take control of the assets and operations of the Debtor. ("the Receivership")[3]

After commencement of the Receivership and several months of operations, the Receiver indicated his intention to liquidate the Debtor's business operations at projected amounts which

---

[2] Case No. 04CV002600.

[3] The entire docket of that proceeding is included as Exhibit A as well as certified copies of pleadings and orders which are referred to herein in the Appendix of Exhibits attached hereto and made a part hereof.

were in a range of $400,000 to $600,000.  It was this act which caused the Movant as the

majority shareholder of the Debtor to initiate proceedings with this Court on July 9, 2004, under

Chapter 11.    On July 15, 2004, the Receiver filed a Motion to Dismiss the Case Or in the

Alternative Abstention Under 11 U.S.C. Section 305 (Doc. No. 13) and a Motion To Excuse

Turnover of Property under U.S.C. Section 543(d)(2) (Doc. No. 14).  On August 13, 2004, the

Debtor filed its bankruptcy schedules and statement of financial affairs. (Doc. No. 37).

After multiple days of hearings[4] and extensive evidence, on September 17, 2004, this

Court entered an order, (Doc. No. 39) denying motions brought by the Receiver and Unizan

Bank ("Unizan") to dismiss or abstain, or to appoint a trustee and to Excuse Turnover of

Property under U.S.C. Section 543(d)(2). *Id.*  During the course of those hearings, the Movant,

as the principal of the Debtor, acknowledged that amendments to the schedules needed to be

filed.[5]

In addition, the following was also the subject of testimony[6] and Unizan Exhibit 14

before this Court:

> Q.    All right.  The next exhibit is Unizan 14, and that relates to a condo on Cane Hill
> Drive --- 5680 Cane Hill Lane, Hillard, Ohio.  Tell us about this condo.
>
> A.    I originally went in this land contract with the Herns for my brother so he could
> live in this condo, and the company would pay the rent.    And I was under the
> impression that I was signing it personally, that the company would guarantee if
> something happened to me, you know,  if I died or worst case scenario, like that, that he
> could still live there and the company would make the payment, but –
>
> Q.    Did you ever make any personal payments on this?
>
> A.     Oh, many times.
>
> Q.    Did the company make payments on this?

---

[4] August 31, September 8 and September 15, 2004.
[5] See Doc. No. 326-4, Page 159, Lines 23 through 25. Despite this statement, no other schedules were ever filed on behalf of the Debtor.
[6] Doc. No. 326-1, Page 20-22 of 40 and Pages 60-63 of original transcript.

A.      Yes.

Q.      What happened after your brother was no longer alive, who lived there then?

A.      Paula and Don Barry decided that they would like to live there, and the Herms didn't have a problem.  And we kept making the payments, and when the Receiver came in we were told not to pay anymore, and at this point I don't know.  According to Dave, his attorney's handling this.

Q.      Dave Hern?

A.      Dave Hern, yes.

Q.      So you have a big question mark on this now?

A.      Correct.

Q.      But you have personally been paid money in it, is that what you're telling the Court?

A.      Well in excess of $9,000.

Q.      And then there also is money that was paid by Columbus Microfilm?

A.      Correct.a-1

On November 10, 2004, the Receiver filed an estimated priority claim in the amount of $50,000.00.  (Claim No. 18-1).  As set forth in the attachments to the proof of claim, the basis for the estimate was that "….the Receiver is still awaiting an accounting from the Debtor, and thus is unable to accurately estimate these fees and expenses, or the amount of his claim."  Despite the denial of the Motion for Turnover, the Receiver never filed an accounting with this Court pursuant to 11 U.S.C. 543(b).

Thereafter, the Debtor attempted to gain confirmation of a plan of reorganization,[7] but was not successful.   As a result, on October 27, 2006, the Court entered an order, converting this

---

[7] On April 20, 2005, the Debtor filed its disclosure statement and proposed plan of reorganization. (Doc. No. 52 and 53). In July of 2005, the Debtor filed an amended disclosure statement and amended proposed plan of

case to Chapter 7. (Doc. No. 164). No additional bankruptcy schedules were filed after the conversion of the case by the Debtor nor the Trustee.

On February 24, 2010, the Trustee caused to be filed his Final Account and Distribution Report.  (Doc. No. 294)  Included within this Report as Exhibit A was the Individual Estate Property Record and Report detailing the Assets that were administered including those scheduled as well as those that were unscheduled, but discovered by the Trustee and subject to his administration.  On August 31, 2010, this bankruptcy case was administratively closed.

On January 1, 2011, the Court entered an order, granting a motion filed by JP Morgan Chase Bank to reopen this case for the purposes of addressing issues related to Attorney-Client privileges and to Reappoint the Trustee. (Doc No. 315). On August 5, 2011, the Court entered an order, again closing the case. (Doc. 329).

On August 5, 2013, the Movant filed an application to reopen this bankruptcy case. The Court denied this Motion, setting forth in its order:

> Based on the presentations made by Ms. Granata and counsel, and upon the Court's review of the record in this case, the Court finds that Movant has failed to demonstrate cause for reopening the chapter 7 bankruptcy proceeding. The Court stated its findings and conclusions on the record of the hearing, which findings and conclusions are incorporated herein by reference.

(Doc. No. 340). The Movant has caused the submission of the transcript of this hearing to be submitted to the Court.  (Doc. No. 342)  The issue as to the scheduling and/or administration of the condominium and the possible claim against the Receiver were raised during the course of the hearing[8], as follows:

---

reorganization. (Doc. 69 and 70). On August 17, 2005, the Debtor filed a second amended disclosure statement. (Doc. No. 74). On September 14, 2005, the Court entered an order approving the Debtor's second amended disclosure statement. (Doc. No. 79)

[8] Doc. No. 342, Transcript of Hearing of October 1, 2011, at Page 31, starting at Line 21 through Page 34, Line 12.

THE COURT: Well, I think we've talked about everything that Ms. Granata shared with us as being her points of concern other than this business about this condominium. What can you tell me about that?

MR. MCCLATCHEY: Your Honor, I don't have any recollection of, I…that was not one of the things I interpreted from her pleading so I did not investigate that. I have some vague recollection that there had been some real estate issues that had been addressed during the state court receivership. But again by the time the trustee was appointed  the…it had been over two years since the Chapter 11 case had been filed. So I went into the Chapter 7 administration process with the understanding that any of those kinds of issues could have and should have address. So, I'm sorry, Your Honor, I can….I'll look to see if I can find anything if the Court would… and update the Court.  But I don't, I don't have any recollection of that, an asset like that being listed.

THE COURT: Oh, I can tell you it wasn't listed.  I looked at the schedules last night.  Neither a land contract nor a condominium were listed.

MR. MCCLATCHEY: Yeah, I don't have any recollection, Your Honor.  And it's, it's… I don't want to speculate.  I mean it's possible that some issue is raised and we actually did check the real estate records.  And if we did we would have a record somewhere that we concluded it was not an asset of the estate.  But I….

THE COURT: What is your opinion of the viability because if in fact it occurred post-petition as alleged by Ms. Granata, what is your argument regarding whether a statute of limitations would have passed.  I mean a post petition, a post petition transfer is not I don't believe is governed by the same section as….

MR. MCCLATCHEY: No.  No, Your Honor.

THE COURT:  ….prepetition transfers.

MR. MCCLATCHEY: That's right, Your Honor, that's correct.  A 549 action to avoid a post petition transfer would have been a cause of action that the debtor-in-possession should have pursued.  Now I'd have to think through the sequence of events to see at some point certainly a 549 action cannot be brought after the bankruptcy case is closed but I understand that's Your Honor's question.  You know as far as the Chapter 7 Trustee was concerned there was no cause of action and there wasn't anything to pursue and if there was it should have been pursued during the Chapter 11 case.  I don't know, I can't tell from the documents that Ms. Granata provided when this alleged transfer took place.  So I don't know whether it was during, whether it was before July of '04 or she…I heard her say today that she thought it was during, apparently during the Chapter 11 phase of the case.  But there are also some allegations made in the papers that there was some money obtained by the receiver after the case was converted.  I have no knowledge of that and I don't believe it occurred.

THE COURT:  Okay, Thank you.

It is clear that neither the Land Contract nor Condominium interest was scheduled as an asset in this case either during its pendency under Chapter 11 or upon conversion to Chapter 7.  It is also clear that such interest or potential claims, arising as it is related to the disposition of the Land Contract or Condominium Interest, was never administered by the Trustee.

During the course of the hearing, the Court also inquired of the Receiver's counsel and was advised as follows:

MR. STRIP:  "…Now in fact there was a property sold by the receiver and I'm not going to bore the Court with great details but all of it was accounted for. Judge Cain filed a...I'm sorry, Judge Cain authorized a sale in the 2004 property. No objection, all these applications by the receiver were served upon her counsel, no objection. The property was sold, no objection.

THE COURT: Is that the condominium to which she is referring to?

MR. STRIP: It is property at 5680 Canehill Lane in Hilliard.

THE COURT: Is that the property, Ms. Granata?

MS. GRANATA: Yes.

THE COURT: Okay.

MS. GRANATA: And it was sold in 2005.

MR. STRIP: It was sold and the receiver filed a report of receiver after the sale confirming the sale.

THE COURT: Do you have a copy of that for me, Mr...

MR. STRIP: I do, Your Honor and the Court approved the report of the receiver after the sale.  And if the Court will allow me one second I will, I 1 have it in my hands, there is also a...what we call a HUD1, a closing statement that was attached. May I...

THE COURT:  Please.

MR. STRIP: ...serve it? Yes. This is a full report of receiver and it is time-stamped with the clerk's...

THE COURT: Okay.

MR. STRIP: ...time-stamp. And the Court can keep that. I have no need for it. I can also...

THE COURT: Give me just one second here, Mr. Strip, to take a look at this.

MR. STRIP: I have a copy of the application for sale which proceeded the order.

THE COURT: Well, this is dated June '05, Mr. Strip, how did this sale take place when the debtor was in bankruptcy?

MR. STRIP: Your Honor, I do not know and I can't answer that. All I can suspect is that perhaps it was done with the authority of the Chapter 11 proceeding. I just do not know.

MS. GRANATA: No, it wasn't.

MR. STRIP: These are...

THE COURT: Okay, you get to...

MS. GRANATA: Okay.

THE COURT: ...respond at another time, Ms. Granata.

MR. STRIP: I know, I know the receiver worked closely with the counsel during the debtor-in-possession process. I cannot tell you why or how  that occurred. But I know Mr. Martin has done about  200 receiverships, certainly knows his way in cooperation with the Chapter 11 Trustee, debtor-in- possession, sorry.

THE COURT: Who are David and Lynn Hern?

MR. STRIP: Are you asking me, Your Honor?

THE COURT: Yes.

MR. STRIP: I have no idea.

THE COURT: Okay.

MR. STRIP: These are records that I as a volunteer in this proceeding today had to go back to common pleas court and dig out of a file on a case that's been closed at common pleas for nine years.

8

But the point I'm making, Your Honor, is during the  Chapter 11 proceeding there was counsel involved  throughout. There was counsel for the bank who was  aware of this. There was counsel for Ms. Granata that was aware of this. Counsel for the Chapter 11 proceedings that was aware of this. No objections were ever filed. All was signed by the common pleas court by a pretty savvy judge, Judge Cain. No objections to everything so everything was proper on its surface. The receiver then filed an accounting of all the funds and then transitioned everything during the Chapter 11 and during the Chapter...following Chapter 7. And, Your Honor, there's one more document for the receiver that indicates as a result of this sale, this is the last report of the receiver, was holding $27,781 and that's approved by the Court. And I'm going to have to assume that during the conversion in the bankruptcy proceeding this was accounted for.
But the point is simply and I leave the Court here, that these are proceedings that happened nine years, going on ten years ago that we had to resurrect and everything was served on Ms. Granata. She had counsel throughout, the bank had counsel throughout. All these proceedings were approved by the Court, they were never any objections to anything. She had personal problems ten years ago. The same personal problems that are being raised today. And I believe this is the wrong forum for her to seek relief. She may have problems with the IRS but I don't think it's a function of the Court to open up a file that goes back nine years in receivership and some six years in bankruptcy to help her with her personal problems. I've heard nothing but vague statements and nothing that shows me there's a reason to reopen the file after the passage of time of six years.

Based on the foregoing, it has been confirmed that the Receiver did sell the property of the Estate and received funds as a result of the sale.  It is not exactly clear from the Record what document was being examined, but the record in the State Court proceeding reflects that the Receiver received the sum of $19,394.11 and that Mr. Strip's firm,  as counsel for the Receiver, received the  sum of $8,405.89[9] from the sale of this Asset.

As a result of the hearing, the Court ultimately found that

"…given the passage of time, the operation of the Bankruptcy Code and various other legal principles such as laches and the final result and appealability or nonappealability, there's no relief available to you in this Court at this time[10]."

---

[9] Appendix Exhibit A-14 - Certified Copy of *Agreed Entry Approving Receiver's Report and Application for Receiver and Attorney's fees Filed May 9, 2005, As Supplemented,* State Court Fiche No. B7699 A17 entered February 6, 2006.
[10] Doc. No. 342, Transcript of Hearing of October 1, 2011, at Page 46, starting at Line 17 through Line 22.

**b.      Legal Authority for Reopening this Case**

Bankruptcy Code § 350(a) provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." Pursuant thereto, this Court closed this case on August 31, 2010.

The closing of a bankruptcy case is, in some respects, simply a ministerial act. This facet is exemplified in this case by the fact that the docket entry closing this case is not provided a specific docket entry number, but is simply set forth as a notation on the Court's docket, between docket entries numbered 303 and 304.

Notwithstanding, the administrative closing of a bankruptcy cases does have substantive consequences under various provisions of the Bankruptcy Code. For example, (1) so long as the property was scheduled, closing the case effectuates a constructive abandonment of estate property under § 554(c), (2) closing a case terminates many of the trustee's avoiding and recovery powers, and also marks the end of the limitations period for most avoidance actions, and (3) administratively closing a case also terminates two of three statutory grounds for revoking a debtor's discharge. 11 U.S.C. § 727(e)(2).

It is, therefore, fundamental that a bankruptcy case should not be closed until the case and the estate have been fully administered. Fully administered means "that all available property has been collected and all required payments made." *Menk v. LaPaglia (In re Menk)*, 241 B.R. 896, 911 (9th Cir. B.A.P. 1999). Because of the nature and circumstances of each particular bankruptcy case, however, the closing of a case under §350(a) may inadvertently occur before an estate has been fully administered. Section 350(b) of the Bankruptcy Code addresses this circumstance.

Section 350(b) provides: "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." This provision is implemented by Bankruptcy Rule 5010 which provides:

> A case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code. In a chapter 7, 12, or 13 case a trustee shall not be appointed by the United States trustee unless the court determines that a trustee is necessary to protect the interests of creditors and the debtor or to insure efficient administration of the case.

It is pursuant to these provisions by which the Movant, as a party in interest, seeks to have this bankruptcy case reopened.

The effect of reopening a bankruptcy case is to put the bankruptcy estate back into process of administration. *Bumb v. Bonafide Mills, Inc.*, 327 F.2d 544 (9th Cir. 1964). Bankruptcy Code § 350 initially provides two specific grounds for which a case may be reopened: (1) to administer assets; and (2) to accord relief to the debtor. In addition, § 350 provides a catchall ground under which a court is authorized to reopen a bankruptcy case by providing that a case may be reopened "for other cause."

Notwithstanding, even if one or more of these grounds exists, the language of § 350(b), by its utilization of the word "may," is permissive and not mandatory. As such, the determination of whether a bankruptcy case should be reopened lies within the sound discretion of the bankruptcy court and is based upon the facts of each particular case. *In re Rosinski*, 759 F.2d 539, 540–41 (6th Cir.1985).

At the same time, it is recognized that motions to reopen should be liberally granted to accord needed relief. *In re Kapsin*, 265 B.R. 778, 780 (Bankr.N.D.Ohio 2001). For this purpose, the Movant submits that reopening this bankruptcy case is proper for purposes of § 350(b) as it will allow the administration of assets that were not previously administered, and will thereby accord relief to the Debtor, the Movant and other parties who are adversely affected by certain

assets of the Debtor not having been administered. The Movant would provide the following summary and overview of the assets for which administration is sought.

**c.      Factual Basis Supporting Why Administration of Assets is Required.**

**(1)      Land Contract and Condominium interest at 5680 Canehill Lane,  Hillard, Ohio.**

As its primary focus to have this case reopened, the Movant seeks to have administered an interest held by the Debtor's estate in the land contract interest as Vendee in the condominium located at 5680 Canehill Lane, Hillard, Ohio. ("Condominium"). During the administration of this case, whether as a Chapter 11 or a Chapter 7, this Property was not administered, as it was never scheduled (as recognized by the Court) nor abandoned.[11] (See Doc. No. 294).  However, as previously noted, it was brought to the attention of the Court[12] during the course of the Receiver's Motion to Abstain or Dismiss and to Excuse Turnover and also was the subject of the prior Motion to Reopen. These facets, concerning the disposition of the Condominium, become problematic when the following details are considered.

First, despite the obvious awareness of the Receiver and his counsel[13] of the Condominium being an asset of the Bankruptcy Estate, the lack of the scheduling of it or any abandonment of such property and more importantly the prohibitions of 11 USC § 543(a),[14] the State Court proceedings reflect the following events.

---

[11] Movant's counsel has reviewed the entire record and is unable to locate any order on abandonment.
[12] The Movant recognizes that the reassignment and subsequent conversion of the case eliminated the knowledge of the Court and the Chapter 7 trustee as to the evidence that was part of the record, though see Bankruptcy Rule 6002.
[13] It was Unizan Bank's Exhibit 14, being a Proof of Claim filed with the Receiver by the Land Contract Vendors. See Doc. 324, Page 27, Line 18-23.  This was also the subject of cross examination by the Receiver's counsel and the Receiver was also present during this testimony.
[14] See also 18 USC 153.

On May 9, 2005, the Receiver filed a pleading styled, *Receiver's Report and Application for Receiver and Attorney Fees.*[15]   In this pleading, the Receiver reported the following: "On September 17, 2004, the Court denied the Receiver's motions to dismiss and/or excuse turnover and ordered the Receiver be superceded by the Debtor. **The Receiver continues to monitor the bankruptcy case, but is not directly privy to Columbus Microfilm's current business operations.**"[16] **(Emphasis Added)** The Certificate of Service of this pleading reflects that it was not served on Grady L. Pettigrew, Jr. as counsel for the Debtor.[17]

Within the attachments to this pleading is the Receiver's billing statements up to January 5, 2005.[18]   These billing statements include the following reference:

> 11/23/2004    Meeting with Attorney Iannota re: condo, t/c US Trustee Borkan re: case dismissed, t/c Attorney Morrison re: banks collateral post petition.[19]

Within the attachments to this pleading is the Receiver's Counsel's billing statements, including a document titled, "Tabs3 Detail Work-in-Process Report."[20]   This document reflects the following entries:

> 10/25/04    Office Conference with ACS and Reg Martin Re: Funds being held by Receiver, Research Re: Bankruptcy Case and Cash Collateral; telephone conference with Reg Martin Re: Same
>
> 11/03/2004    Telephone Conf with US trustee re: status of Chapter 11 Case, Recent Problems with Funds held in Receiver's Account and Abandonment of Condo being Purchased on Land Contract

---

[15] Appendix Exhibit A-1 - Certified Copy of *Receiver's Report and Application for Receiver and Attorney's Fees,* State Court Fiche No. B1938E19.

[16] Page 3 of Appendix Exhibit A-1.

[17]   Mr. Pettigrew was contacted but advised he did not recall any detail or circumstances surrounding this sale.  The Receiver objected to the Plan of the Debtor (Doc. No. 89) on 10/25/2005 and stated that "the Debtor did not file any objection to the Receiver's Application for Fees." (¶3, Page 1 of 2)

[18] The Receiver and Counsel continued to bill post petition, including the time and efforts to avoid turnover.

[19] Appendix Exhibit A-1 - Certified Copy of *Receiver's Report and Application for Receiver and Attorney's Fees,* State Court Fiche No. B1938F11.

[20] Appendix Exhibit A-1 - Certified Copy of *Receiver's Report and Application for Receiver and Attorney's Fees,* State Court Fiche No. B1938G07.

Like the receiver's billing statements, these billing statements also end on January 5, 2005. Both the billing statements of the Receiver and his counsel reflect that on January 5, 2005, the Receiver, Mr. Strip and Mr. Ionnata discussed the status of the Chapter 11 Case.[21]

On May 17, 2005 in the State Court proceeding, there was filed a Response of *Plaintiff Unizan Bank, National Association to Receiver's Report and Application for Receiver and Attorney's Fees.*[22]   In the response, Unizan simply related that "..(the) Report is extensive and Unizan and its counsel need sufficient time to review it and consider whether Unizan has any objections."   Thereafter, on May 20, 2005, there was entered a *Stipulation and Order Concerning Receiver's Report and Application for Receiver and Attorney's Fee* that granted Unizan Bank an additional thirty (30) days to file its response.[23]

However, on June 9, 2005, before the deadline for responding had passed, the Receiver filed a pleading styled *Third Report of Receiver and Application for Sale of Property.*[24] In this pleading, the Receiver  advanced that "…pursuant to the prior orders of this Court and **pursuant to the agreements reached in the bankruptcy of the subject corporation, the Receiver continues to have jurisdiction and control of property known as Canehill Lane, Hillard, Ohio 43026**."  (emphasis added). Review of the State Court Docket as well as the Bankruptcy Docket does not reflect "any agreements reached in the bankruptcy of the subject corporation." Further, the Movant is not aware of any such agreements. Finally, this certificate of service of this Application was also not served on counsel for the Debtor.

---

[21] Appendix Exhibit A-1 - Certified Copy of  *Receiver's Report and Application for Receiver and Attorney's Fees,* State Court Fiche No.'s B1938F11 and  B1938G07.

[22] Appendix Exhibit A-2 - Certified Copy of  *Response of Plaintiff Unizan Bank, National Association to Receiver's Report and Application for Receiver and Attorney's Fees.*  State Court Fiche No. B2113C13.

[23] Appendix Exhibit A-3 – Certified Copy of *Stipulation and Order Concerning Receiver's Report and Application for Receiver and Attorney's Fee.  State Court Fiche No. B2155G13.,*

[24] Appendix Exhibit A-4 - Certified Copy of *Third Report of Receiver and Application for Sale of Property.* State Court Fiche No. B2595C 04.

14

On June 20, 2005, Unizan Bank filed its "*Supplemental Response of Plaintiff Unizan Bank, National Association to Receiver's Report and Application for Receiver and Attorney's Fees.*"  In this pleading, Unizan stated the following:

> "…Unizan does not object to the Receiver's Report provided that: (a) the Receiver's Report represents a final statement of the Receiver and of the Receiver's counsel for services rendered and costs incurred in this proceeding, and (b) the funds currently on deposit with the Receiver, believed by Unizan to be approximately $25,000, are utilized towards payment of these fees and expenses.  Unizan therefore requests that the Receiver **provided evidence to the Court that the Receiver has the authority, given the pending Chapter 11 bankruptcy proceeding of Defendant Columbus Microfilm, Incorporated, to utilize the funds on deposit with the Receiver toward payment of the Receiver and his counsel's fees and expenses.  Given the pending bankruptcy proceeding Unizan believes that the Receiver must obtain an order from the United States Bankruptcy Court which authorizes the Receiver's use of these funds towards the payment of the Receiver's and its counsel's fees, after which time this Court may review and rule on the Receiver's Report.**"[25]  **(Emphasis Added)**

Based on this pleading, this would appear to confirm the billing entry of counsel for the Receiver, and that the Receiver had funds of the Debtor in his possession in the approximate amount of $25,000.00; but more importantly, it shows that Unizan Bank[26] was not aware of any Bankruptcy Court orders concerning such funds.

On June 21, 2005, twelve days after the filing of the Application to Sell, the State Court signed an *Order Approving Third Report of Receiver and Application for Sale of Property* and it was entered on June 22, 2005.[27]  Other than Judge Cain, the only other signatory to this order was counsel for the Receiver.  Also, on June 21, 2005, there was filed by David and Lynn Hearn,

---

[25] Appendix Exhibit A-5 - Certified Copy of *Supplemental Response of Plaintiff Unizan Bank, National Association to Receiver's Report and Application for Receiver and Attorney's Fees*.  State Court Fiche No.2814120.

[26] Unizan Bank was the largest secured creditor of the Debtor.

[27] Appendix Exhibit A-6 - Certified Copy of *Order Approving Third Report of Receiver and Application for Sale of Property*. State Court Fiche No.B2796H20.

a Motion to Intervene.[28]   On June 30, 2005, the Receiver filed a *Motion to Strike and Objection to Hearn's Motion to Intervene.[29]*

After the Receiver's Objection to the Motion to Strike that was filed on June 30, 2005, no other activity took place in the State Court proceedings until August 2005.  However, on July 20, 2005, the Condominium was transferred to the Debtor by General Warranty Deed. A copy of the transfer history of the Condominium from the Franklin County Auditor is included in the Appendix as Exhibit B.   A copy of the recorded deed transferring the Condominium is included in the Appendix as Exhibit B-1. With respect to the above transfer to the Debtor, the consideration allegedly paid by the Debtor was $84,500.00.

On the same day, July 20, 2005, the Receiver conveyed the Condominium by Fiduciary Deed. This deed in included the following recital:

> That Reg Martin, Receiver for Columbus Microfilm Inc. Grantor: Columbus Microfilm, Inc. by order of appointment by the Franklin County Common Pleas Court dated March 5, 2004 Case No. 04CVE-03-2600, (Grantor) of Franklin County, Ohio…

The Grantee of this deed was a Charles A. Wemp.  This deed is included in the Appendix as Exhibit B-2.  With respect to the second transfer to Charles Wemp, the consideration paid was $110,000.00.

On August 31, 2005, an Agreed Entry was entered by the State Court permitting the Herns to Intervene.[30] On September 1, 2005, the State Court issued a *Pre-Trial Order* scheduling the matter for a pretrial conference on October 4, 2005.[31]   On September 22,

---

[28] Appendix Exhibit A-7 - Certified Copy of *David and Lynn Hearn's Motion to Intervene*. State Court Fiche No.B2875B01.
[29] Appendix Exhibit A-8 - Certified Copy of *Receiver's Motion to Strike and Objection to Hearn's Motion to Intervene*. State Court Fiche No.P301304.
[30] Appendix Exhibit A-9 – Certified Copy of *Agreed Entry*. State Court Fiche No.B4247G04.
[31] Appendix Exhibit A-10 – Certified Copy of Pre-Trial Order, State Court Fiche No. B4252BD

2005, a Notice of Suggestion of Stay was filed in the State Court proceedings.[32]   On

October 3, 2005, the State Court issued an *Entry* which was entered on October 4, 2005,

and stayed the proceedings with the case being placed on the inactive docket pending

"final disposition in the Bankruptcy Court.[33] Also, on October 4, 2005, the Receiver filed

a *Fourth Report of Receiver*[34] reflecting that he had on hand from the closing of the

Condominium the sum of  $27,781.06.

Thereafter; on February 7, 2006, and notwithstanding the stay, the State Court

entered an *Agreed Entry Approving Receiver's Report and Application for Receiver and*

*Attorney's Fees Filed May 9, 2005 as Supplemented.*[35]   This Agreed Entry was signed

only by Counsel for the Receiver, with all other signatures affixed by counsel for the

Receiver.  Signature for Grady L. Pettigrew, Jr. reflected that this was "submitted on or

about January 15 and no objection and no approval provided."

In the Agreed Entry, the State Court authorized the Receiver to make the

following payments from the funds on hand:

- $19,344.11 to the Receiver;

- $24,076.24 to the Receiver's Counsel

Subsequent to this conveyance, and in apparent reliance on the orders of the Court of

Common Pleas of Franklin County, the Condominium has been since the subject of additional

transfers.

**(2)     Possible claims against the Receiver or other recipients or individuals involved in
the retention and or disposition of Estate funds or assets in contravention of 11 USC 543(a).**

---

[32] Appendix Exhibit A-11 – Certified Copy of *Notice of Suggestion of Stay*.  State Court Fiche No.B4257F10.
[33] Appendix Exhibit A-12 – Certified Copy of Entry. State Court Fiche No.85000e0.
[34] Appendix Exhibit A-13 - Certified Copy of *Fourth Report of Receiver*, State Court Fiche No.85000e0
[35] Appendix Exhibit A-14 – Certified Copy of *Agreed Entry Approving Receiver's Report and Application for
Receiver and Attorney's Fees Filed May 9, 2005 as Supplemented*.  State Court Fiche No.87699A17.

As reflected in the foregoing facts, and notwithstanding the Court's denial of his Motion to Excuse Turnover, the Receiver continued his efforts to dispose of Estate property and actually did so.  Notwithstanding, at the prior hearing held on the Motion to Reopen, Counsel for the Receiver advised this Court that he was unaware of the legal basis of the Receiver's authority to proceed, but advanced to this Court that what he "suspect is that perhaps it was done with the authority of the Chapter 11 proceeding." No support, however, is found in the record of this case for the proposition the Receiver obtained court permission to dispose of estate assets as this statement asserts.

Notwithstanding, it can be expected that the passage of time might have dulled memories as to the transaction. Furthermore, regarding the unauthorized disposition of estate property, it would seem that the process may have involved counsel,[36] and that the disposition of the property was subject to approval by the State Court, thereby possibly leading one to the tacit conclusion that "No objections to everything so everything was proper on its surface."[37]

Such a conclusion, however, regardless of whether the putative disposition of the estate asset was or was not done in good faith, does not eliminate the fact that the asset was not abandoned nor administered under the aegis of the Bankruptcy Code. Thus, ultimately what one is left with is this predicament: There exists, and will continue to exist, a cloud on the title of the Condominium because until administered or abandoned it remains an asset of the Estate.

Yet, this predicament could be resolved in short order. All the Receiver need do is present a Court order or other evidence that would reflect that the Condominium was scheduled or administered and this motion would be rendered moot.  If such evidence it is not presented or available, then it falls within the Court's exclusive providence to eliminate cloud with respect to

---

[36] No actual signatures of counsel are on the order, "other than submitted but not signed."
[37] Doc. No. 342, Transcript of Hearing of October 1, 2011, at Page 39 Line 2-4.

title to the Condominium. For this purpose, and while counsel for the Movant cannot envision

that the Receiver; his counsel, the Bank, or others would engage in any untoward activities with

respect to estate property vis-à-vis this Court -- it is clear that this estate asset and any claims

related thereto were neither scheduled nor administered, a fact that was readily acknowledged by

the Trustee at the prior hearing held to reopen this case.

This lack of any evidence of abandonment will also likely give rise to some far more

thorny claims and issues to deal with in this case. To begin with, there are issues with respect to

the Movant. In particular, even if the Movant wished to pursue claims on behalf of the Debtor or

personally,[38] she cannot because such claims are assets of the Debtor's estate, or entangled with

such claims, and thus, the Trustee, as the representative of the Estate, would be the real party in

interest, and a necessary party to any such litigation. Furthermore, give these circumstances,

there likely exists claims to be asserted against the Receiver which may include, but are not

necessarily limited, to the following:

(1) Failing to Provide for Turnover of Assets and/or an Accounting.

Under section 543(a) a receiver with knowledge of the bankruptcy case "may" not take

any actions.  Section 543(a) provides that:

(a) A custodian with knowledge of the commencement of a case under this title
concerning the debtor may not make any disbursement from, or take any action in the
administration of, property of the debtor, proceeds, product, offspring, rents, or profits
of such property, or property of the estate, in the possession, custody, or control of such
custodian, except such action as is necessary to preserve such property.

(b) A custodian shall—

(1) deliver to the trustee any property of the debtor held by or transferred to such
custodian, or proceeds, product, offspring, rents, or profits of such property, that
is in such custodian's possession, custody, or control on the date that such
custodian acquires knowledge of the commencement of the case; and

---

[38] The Movant testified that she personally had paid on the land contract.

(2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian.

As noted, not only did the Receiver take action with respect to the Condominium, the Receiver never provided any accounting to this Court as required under 11 USC § 543(a). Further, based on the evidence in the public record, funds of this Bankruptcy estate were not turned over to the Debtor in Possession or the Trustee.[39]

(2) Failure to Preserve the Receivership Estate, by *inter alia*, failing to timely pay debts and necessary operating expenses of the Debtor including payroll and related taxes.

The Receiver was appointed on March 5, 2004.  In the original filing of this case, the Internal Revenue Service was not scheduled as a creditor.  In fact, on June 16, 2005, the Internal Revenue Service sought leave to file a proof of claim after the bar date because of its unscheduled claim. (Doc. No. 62)  In Exhibit A to that pleading, the only prepetition taxes owing from the Debtor were for the periods when the Receiver was in possession.   As set forth in Doc. 129-1 and Proof of Claim 27-1 and 28-1, the withholding tax owing to the United States of America, Internal Revenue Service for the period ending March 31, 2004 was $29,829.59, for the period ending June 30, 2004, a total of $11,671.02, and an additional sum of $795.64 for the Federal Unemployment Tax for the period of January 1, 2004 through July, 1, 2004.  As set forth in Proof of Claim 25-1, the withholding tax owing to the City of Columbus for the second quarter was $1,497.82.

The Receiver never filed any accounting with this Court, however.[40] Consequently, It is impossible to determine whether other claims may exist to the benefit of the Debtor if unauthorized disbursements were made to other parties. Because such claims were not otherwise

---

[39] Review of the trustee's Final Account (Doc. No. 294) do not reflect any such assets.

[40] Nor did the Receiver ever file an amended proof of claim reflecting such payments or withdraw such claim.  Seed Claim No. 18-1, filed November  10, 2004.

disclosed or administered during the pendency of this case, they remain an asset of this case.[41] The Trustee did pursue and considered other unscheduled claims for post petition transfers during the Chapter 11 proceeding,[42] and presumably would have pursued claims against the Receiver and/or others had he known or been made aware of the same.[43] Particularly so, because this case was ultimately determined to be administratively insolvent.  As a result, the Trustee and his counsel accepted less than the full payment of their approved fees and expenses, yet the Receiver and his counsel apparently received all of their fees, including those fees related to contesting the Chapter 11.[44]

(3) Other Unscheduled or Unadministered Claims

This case was closed without the abandonment of the claim against former counsel.  The Movant also had previously advanced in the Motion to Reopen a number of issues surrounding various claims that were not scheduled, but which the trustee did not believe worthy of further efforts as follows:

**1.) Claims regarding and surrounding a former employment agency utilized by the Debtor, JT/SG Enterprises Inc.**

---

[41]At the prior hearing held to reopen, the Movant inferred to the Court that she wanted to have the case reopened to address her tax liability. Such relief is not sought by way of this Motion. Instead, any issue regarding the Movant's tax liability is confined to having this case reopened so that any claim against the Receiver regarding the tax liability may be administered. In this way, the Movant is not seeking to actually contest the tax liability assessed by the Internal Revenue Service.  While these claims may be subject to various defenses, the fact they were not scheduled nor administered prevent the Movant from even advancing such claims.

[42] See Doc. No. 294, Filed 2/24/2010.  Also see Doc. No. 276, where the Court authorized the employment of counsel for the Receiver to also be employed as Special Counsel for the Trustee to pursue one such unscheduled claim.  As a result, Counsel also received fees and reimbursement of expenses for such efforts. (Doc. No. 287 and Doc. No. 294, Page 10 of 134)

[43] The Application for Compensation reflects that the Trustee engaged in an "Extended Conference with Reg Martin regarding legal claims of Granata during receivership" on November 1, 2006, 4 days after conversion.  See Doc. No. 218, Page 8 of 15.

[44] See Exhibit G.  To the extent those fees were not paid from the assets from the liquidation of the condominium, they were paid by Unizan Bank.

On September 30, 2008, the Trustee caused to be filed a Proposed Abandonment of Alleged Claims Against Temporary Agencies.  (Doc. No. 268)  By this pleading, the Trustee proposed to abandon:

> any and all alleged claims that Columbus Microfilm, Inc. ("CMI") had or may have had against any temporary agencies, staffing agencies, employment contractors or other entities that provided CMI with staffing, laborers, employees, workers and/or others who did or were intended to perform work for CMI ("temporary agencies").

The reason advanced for this action was that the Trustee "concluded that there is insufficient, credible evidence to justify litigation against the temporary agencies. Trustee has found no evidence to support the claims." *Id.*

The pleading does reflect the language "If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the application and may enter an order granting that relief. If there is no timely objection, the alleged claims will be deemed abandoned."  Despite this pleading and the statement of the intent to abandon, no actual order was ever entered by the Court.[45]  Nor were any such possible claims scheduled.  Finally, no such claims were ever set forth as abandoned in the trustee's Final Report.  (Doc. No. 294, Pages 62 and 63).

To eliminate any confusion as to whether this would constitute administration, it would appear to be appropriate to reopen this case and simply enter an order abandoning such claims.

### 2.)      The claims against former counsel for the Debtor, Grady Pettigrew.

As indicated, this case was closed without abandonment of the claim against the debtor's former counsel, Grady Pettigrew.  (See Page 63 of Exhibit 8 to Doc. No. 294).

---

[45] For e.g., See Doc. No. 196 and Doc. No. 206 wherein the Trustee filed a similar pleading and thereafter an order was granted with respect to a disputed account receivable with Huntington Bank.

Ostensibly this was done with the hope that it might someday be recovered.   It now

being some 5 years later and with the present Motion being advanced to try and bring

closure to this case, this claim should be either administered or abandoned as well.

**d.      Arguments in Support of Reopening this Case**

The basis underlying the Movant's Motion to reopen is predicated on the fact that the

above Assets -- having potential value to the estate, as well as to the Debtor and the Movant –

have been essentially frozen, with such Assets being held by a bankruptcy estate which is

administratively closed. Put differently, until this case is reopened to administer the above

Assets, the legal status of the Assets will remain in legal limbo. This is particularly true with

respect to the Condominium Property, with there is likely existing a cloud on the title to the

Property.

Therefore, for the potential value of such Assets to be realized, and to clear up any

potential clouds with respect to title of the Condominium, this case should be reopened. In

support of this position, the Movant begins with an overview of the related Bankruptcy Code

provisions which pertain to a Motion to Reopen under § 350(b), and for which the Court is

intimately familiar, but which are set forth for context.

**(1) Assets Remain Estate Property and subject to the automatic stay.**

At the commencement of a bankruptcy case, an estate is created comprised of all legal

and equitable interests held by a debtor in property. 11 U.S.C. § 541(a). The scope of property of

the estate is broad, and will include all interests held by a debtor, regardless of whether the asset

is scheduled or otherwise disclosed during the administration of a bankruptcy case. *Parker v.

Wendy's International, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004). There are a multitude of

implications which are derived from property being included in a debtor's bankruptcy estate. Relevant here, are two specific implications.

First, any property encompassed within the bankruptcy estate comes under the exclusive jurisdiction of the district court, 28 U.S.C. § 1334(e), and thus by extension, such property comes under the exclusive jurisdiction of the bankruptcy court. 28 U.S.C. § 157. Ergo, only the bankruptcy court may dispose of estate property. *See* 11 U.S.C. § 363. Second, the automatic stay of § 362 protects estate property, requiring that before any action can be taken with respect to such property outside of the bankruptcy forum, that relief from the stay must be obtained from the bankruptcy court. *See* 11 U.S.C. § 362(d). The protections of the automatic stay to estate property, moreover, continue notwithstanding that the underlying bankruptcy case is closed, dismissed or converted.[46] *In re Menk*, 241 B.R. at 911; *In re Young*, 497 B.R. 904, 918 (Bankr W.D.Ark. 2013). The stay, therefore, still applies to those Assets at issue.

Once property becomes estate property, it only ceases to become property of the estate when one of the following events occur: (1) the property is transferred free and clear pursuant to 11 U.S.C. § 363; (2) the property is divested from the estate by an order of confirmation entered by the court, 11 U.S.C. §§ 1141, 1327; (3) the property is disbursed, 11 U.S.C. §§ 725 and 726,

---

[46]Section 362(c) provides in relevant part:

Except as provided in subsections (d), (e), (f), and (h) of this section—

    (1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;

    (2) the stay of any other act under subsection (a) of this section continues until the earliest of--
        (A) the time the case is closed;
        (B) the time the case is dismissed; or
        (C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied[.]

or (4) the property is abandoned under 11 U.S.C. § 554.[47] *See In re Zavala*, 444 B.R. 181, 189

(Bankr. E.D.Cal. 2011). In this matter, nothing on the record shows that either of the first three

events occurred with respect to the Assets. Moreover, the Assets, as now explained, do not

appear to have been abandoned under § 554.

Abandonment may be effectuate in a couple of different ways. Initially, Bankruptcy Code

§ 554 provides an affirmative mechanism by which a party may come before the court and seek

to have an asset of the estate abandoned. Specifically, in the first two provisions of § 554, it is

provided that estate assets may be abandoned by order of the court, upon a request made by the

trustee or a party in interest. 11 U.S.C. § 554(a)/(b).[48] This is sometimes referred to as specific

abandonment. Insofar as it concerns this basis for abandonment, the record in this case does not

reflect that any specific abandonment of the Assets at issue in this case occurred.

To be sure, the Trustee did file a notice of proposed abandonment for one of the Assets:

the claims against JT. (Doc. No. 268)   However, as this case was closed prior to the entry of an

order on this Notice, the actual abandonment of this asset was not effectuated. *See Nigro v.

Oxford Development Co. (In re M.J. Shoearama, Inc.)*, 137 B.R. 182, 187 (Bankr.W.D.Pa.1992)

(abandonment requires judicial involvement and a court order).

---

[47]Property may also cease to be property of the estate when it is exempt property once the objection time has
expired. *See Owen v. Owen*, 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). The effect of an exemption
is that the debtor's interest in the property is "withdrawn from the estate (and hence from the creditors) for the
benefit of the debtor."

[48]These provisions provide:

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the
> estate or that is of inconsequential value and benefit to the estate.

> (b) On request of a party in interest and after notice and a hearing, the court may order the trustee to
> abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and
> benefit to the estate.

Consequently, with respect to all of the Assets, no specific abandonment occurred as it concerns either of the first two provisions provided in § 554. The same is also true for the final ground set in § 554 for abandonment.

Section 554(c) provides:

Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

This is known as technical or constructive abandonment and, unless the court orders otherwise, occurs automatically upon the administrative closing of case under § 350. However, the *sine quo non* for technical/constructive abandonment to occur under § 554(d) is that the property must have been scheduled under § 521(a)(1), meaning that sufficient information to identity the property was provided in the schedules. *Lee v. Foster & Garbus LLP*, 926 F.Supp.2d 482, 486–87 (E.D.N.Y.2013).

The fact that certain estate property may be disclosed during the course of a bankruptcy proceeding -- such as transpired with the Condominium in this case, with this asset being disclosed during the course of the Receiver's Motion to Excuse Turnover of Property and to Dismiss-- does not mean that such property is scheduled or otherwise administered for purposes of abandonment under § 554(c). It has been recognized that to hold otherwise, would deprive creditors and other parties in interest, who were not a party to such a proceeding, of their due process rights. *See In re Heil*, 141 B.R. 112, 114 (Bankr.N.D.Tex.1992) (due process requires that notice of trustee's intended abandonment of estate property be given to provide parties opportunity to object and seek hearing in event of objection).

This requirement, of affording interested parties due process before property may be abandoned from the bankruptcy estate, is embodied in Bankruptcy Rule 6007(a) which provides, in relevant part:

> Unless otherwise directed by the court, the trustee or debtor in possession shall give notice of a proposed abandonment or disposition of property to the United States trustee, all creditors, indenture trustees, and committees elected pursuant to §705 or appointed pursuant to §1102 of the Code.

Thus, the mere disclosure of an estate asset during the course of a bankruptcy proceeding should not be equated with the scheduling of the asset for purposes of finding the asset administered and thus constructively abandoned under § 554(c). This is particularly true here.

The Trustee was not present during the course of those proceedings held on the Receiver's Motion to Excuse Turnover of Property and to Dismiss, at which the Condominium interest was disclosed, as these proceedings occurred prior to the conversion of this case to Chapter 7. Moreover, at the prior hearing held on the Movant's Motion to Reopen, the Trustee specifically stated with regards to the Condominium:

> Your Honor, I don't have any recollection of, I…that was not one of the things I interpreted from her pleading so I did not investigate that.  I have some vague recollection that there had been some real estate issues that had been addressed during the state court receivership.  But again by the time the trustee was appointed  the…it had been over two years since the Chapter 11 case had been filed.  So I went into the Chapter 7 administration process with the understanding that any of those kinds of issues could have and should have address.

(Transcript of hearing on Motion to Reopen, at pg 32).

Under these conditions, where the Trustee was not afforded an adequate opportunity to investigate the potential value of the asset for the benefit of the estate, no constructive/technical abandonment can be deemed to have occurred. As stated in the case of *Mele v. First Colony Life Ins. Co.*:

in order to prove that an implied abandonment was indeed effected, the plaintiff must show at a minimum that the trustee made a reasonable inquiry consistent with his statutory duties to the estate and to the creditors as to the value of estate property before impliedly abandoning it ….

127 B.R. 82, 86 (D.D.C.1991). *See also In re Prospero*, 107 B.R. 732, 735 (Bankr.C.D.Cal.1989) (Mere inaction by the Trustee does not accomplish abandonment).

Where no constructive or technical abandonment has occurred, Bankruptcy Code § 554(d) compliments § 554(c) by providing that, in the absence of a specific court order, property that is not scheduled under § 521(a)(1) is not abandoned. This means that, unless the court has ordered the property abandoned under either of the first two provisions of § 554, or a technical abandonment of the property has occurred under § 554(c), property included in the estate, including unscheduled property, will remain there in perpetuity until some action is taken with respect to the property. *Darrah v. Franklin Credit (In re Darrah)*, 337 B.R. 313, 316 (Bankr.N.D.Ohio 2005).

In this matter, the only schedules filed in this case occurred shortly after this case was commenced as a Chapter 11 bankruptcy. No amendments were thereafter made to the Debtor's schedules, whether during the pendency of this case under Chapter 11 or Chapter 7. In the schedules the Debtor filed with the Court, the Assets at issue in this case were not listed or otherwise delineated.

In this type of instance, it is well-established that no technical abandonment of the Assets would have occurred by operation of § 554(c). As recently set forth by the Bankruptcy Appellate Panel for the Sixth Circuit Court of Appeals:

. . . .technical abandonment of an asset pursuant to § 554(c) ordinarily cannot occur if the Debtor failed to list the asset on his schedules. Cundiff v. Cundiff (In re Cundiff), 227 B.R. 476, 478 (6th Cir. BAP 1998); Darrah v. Franklin Credit (In re Darrah), 337 B.R. 313, 316 (Bankr.N.D.Ohio 2005) ("[P]roperty not properly scheduled remains property of

28

the estate in perpetuity."). This is true even if the trustee had knowledge of the asset. Vreugdenhill v. Navistar Int'l Transp. Co., 950 F.2d 524, 526 (8th Cir.1991); Cundiff, 227 B.R. at 479. A debtor has an affirmative duty under 11 U.S.C. § 521(a)(1) to list all his assets and liabilities on his bankruptcy schedules. 11 U.S.C. § 521(a)(1) (2004). "When a debtor fails to list an asset on her schedules, it remains unadministered because the trustee has not been placed on notice of the existence of the asset."

*In re DeGroot*, 484 B.R. 311, 320–322 (6th Cir. B.A.P. 2012).

The Movant finally submits that there is no indication that the Trustee in this matter otherwise sought to administer the Assets at issue. For example, the Trustee never sought to amend the Debtor's schedules in accordance with Bankruptcy Rule 1009. Nor, with the exception of the claim against JT, were any pleadings filed by the Trustee with respect to the Assets.

Accordingly, for all these reasons, the Assets at issue in this matter remain property of the Debtor's administratively closed bankruptcy case, and are still subject to the automatic stay of § 362. *See First Nat'l Bank v. Lasater*, 196 U.S. 115, 119, 25 S.Ct. 206, 49 L.Ed. 408 (1905).

**(2) Case should be reopened to allow for the Administration of the Estate Assets which have not been Abandoned**

As stated, § 350(b) specifically provides, as a statutory basis, that a court may reopen a bankruptcy case to "administer assets." As it regards this ground to reopen a bankruptcy case, a well-known bankruptcy treatise, Norton, has explained:

A bankruptcy court may reopen a case if the estate needs further administration. At least one circuit court has held that, upon prima facie proof that an estate has not been fully administered, a bankruptcy judge has a duty to reopen the estate, and may do so sua sponte. Unscheduled assets, newly discovered assets, or concealed assets usually furnish a basis for reopening the case. However, it has been held that the time and expense of administration may outweigh the benefit of the unadministered assets and hence justify refusal to reopen. The likelihood of recovery is also a factor considered in determining whether to reopen.

2 Norton Bankr. L. & Prac. 3d § 40:4. With respect to this standard, the Movant respectfully submits that reopening this case to set forth unscheduled Assets is warranted. This is particularly true with respect to the Condominium.

On the matter of the Condominium, these facts are clear: (1) the Debtor's interest in the Condominium became estate property under § 541(a); (2) the Receiver had actual and constructive notice of this bankruptcy case, with multiple notices regarding the commencement of this bankruptcy case being filed in the Receivership action and the Receiver having filed motions in this case; (3) the Receiver sold the Condominium without obtaining authorization from this Court; (4) the Receiver received proceeds from the putative sale of the Condominium totaling $27,781.06; and (5) the Receiver never accounted to this Court for these proceeds. On so many different levels, these facts cry out for the reopening of this case so as to permit the administration of the Condominium as an asset of the Debtor's bankruptcy estate.

To begin with, since the Debtor's' interest in the Condominium has never been abandoned, that interest has remained within the exclusive jurisdiction of this Court, and subject to the automatic stay which was never lifted with respect to the Debtor's interest in the Condominium. Under these circumstance, all transfers of the Condominium, beginning with the Receiver's sale of the Property in 2005, and continuing up until the most recent transfer in 2013 to Brittany Osborne, are void or, at the very least voidable. *In re DeGroot*, 460 B.R. 159, 167 (Bankr.W.D.Mich.2011), *citng Easley v. Pettibone Michigan Corp.*, 990 F.2d 905 (6th Cir.1993) (actions taken in violation of automatic stay are invalid and voidable, and shall be voided absent limited equitable circumstances). This is true, notwithstanding that the Appointing Court may have approved of the sale of the Condominium. *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d

374, 382 (6th Cir.2001) (as it concerns a bankruptcy court's in rem powers, other courts are stripped of their concurrent jurisdiction).

All this invariably leads to this conclusion that, at a minimum, there exists a cloud with respect to title to the Condominium. Moreover, this cloud as to title will, in the absence of reopening this case to administer the asset, continue in perpetuity, potentially rendering the Condominium unmarketable and of little value. This status as to the title to the Condominium goes contrary to a basic facet of American law which has developed to promote stability in the transfer of real property interests. *City of Seabrook v. Port of Houston Authority*, 199 S.W.3d 403, 412 (2006).

Moreover, the passage of time should not be viewed as diminishing the necessity of reopening this case to administer estate assets. For this purpose, the case of *In re Dunning Bros.*, 410 B.R. 877, 890 (Bankr.E.D.Cal.2009), is illustrative, and the Movant would ask the court to apply its reasoning in this matter.

In the case of *In re: Dunning Bros.*, the bankruptcy court was asked to reopen a bankruptcy case, which had been commenced more than 70 priors, in order to administer certain assets which were assets of the debtor's bankruptcy estate, but which had never been administered because they were never scheduled. As in this case, the basis for the movant seeking to have the case reopened was to remove any cloud on title which existed on the undisclosed property, this property being three parcels of real property owned by the debtor. After considering the jurisdictional issues raised in the case, and determining that it had jurisdiction to adjudicate the matter, the court in *Dunning Bros. supra* discussed the merits of the motion to reopen. *Id*. at 882-86.

In considering the matter, the court began by noting the "first point to be made is that, in deciding to reopen a case, the bankruptcy court should do no more than determine that there is bankruptcy business to be done." *Id*. at 887. The Court further opined that there "is no time limit for seeking to reopen a bankruptcy case." *Id*. at 888. Particularly relevant here, the court in *Dunning Bros*., Id., then stated:

> the context of unscheduled property, the question of whether the case should be reopened requires only a decision whether there may be unscheduled property that could be administered by a trustee. It is not an appropriate occasion to consider or decide whether defenses could be established against the trustee. So, for example, the equitable defense of laches is not relevant to the decision whether to reopen a case, even though it may later be raised as a defense in the litigation that may follow.

*Id*. at 887.

The Court finally concluded that the case should be reopened as the matter before it was "the paradigmatic case of reopening to deal with unadministered real property that is unscheduled." *Id*. at 889. For this determination, the court *In re Dunning Bros* observed what is equally applicable in this case: "Sale[s] should be straightforward. There is no other way to assure clear, and insurable, title can be conveyed. No useful purpose would be served by refusing to reopen." *Id*.

Given its congruity with this matter, the Movant submits that, based upon the reasoning and decision in the case of *In re Dunning Bros*, reopening this case is warranted. In making this statement, the Movant notes that, in 2011, this case has been previously reopened for the limited purpose of addressing an issue related to the attorney-client privilege. -- an issue which, unlike the matter now before the Court, did not implicate the exclusive jurisdiction of the Court over estate property, thereby possibly providing that movant with relief in another forum. Accordingly, if for no other purpose than to administer the estate's interest in the Condominium, the Movant would submit that reopening this case is warranted.

In any event, this case should be reopened so as to allow for the administration of all the Assets *in toto*. Doing so, would not only afford relief to the Debtor, and the Movant, who is personally liable for many of the obligations of the Debtor, but it would also allow for the administration of claims which have real potential value to the estate. First, and foremost, since July of 2005, the Receiver has held in his possession the sum of $27,781.06, all or most of which constitutes net proceeds realized from the sale of the Condominium by the Receiver. Assuming even a 2% interest rate, compounded annually, the amount of funds now due to the estate would be more than $33,000.00. *See* O.R.C. § 2735.06 ("By order of the court appointing a receiver as provided in section 2735.01 of the Revised Code, funds in the hands of such receiver may be invested upon interest.").

It also cannot be ignored that the sale of the Condominium, having occurred outside of the bankruptcy forum, was necessarily defective – of particular concern, the sale did not comport with the process under § 363 and the applicable rules pertaining thereto. Said  process is meant to ensure that any sale of estate property realizes the maximum benefit to the estate. *In re Made in Detroit, Inc.*, 414 F.3d 576, 581 (6th Cir. 2005). Thus, further value could be realized by the Debtor's estate, with the Movant submitting that since the Receiver, having knowledge of the bankruptcy case and being represented by competent counsel, did not follow bankruptcy law, the burden is upon him to show that he realized the highest and best value for the estate.

In turn, the Receiver's failure to abide by the dictates of bankruptcy law segues into the next matter the Court should consider. As stated, the Debtor, and potentially the Movant, have potential claims against the Receiver, including but not limited to claims arising from the Receiver's unlawful sale of the Condominium. For this purpose, the Receiver should not be able to use as a shield the argument that such claims cannot be pursued because they are

33

unadministered assets of a closed bankruptcy case. Such an assertion, if made, would be a clear misuse of the bankruptcy process. The same would also be true for those other Assets, all of which involve possible claims for injuries suffered by the Debtor and the Movant. Of particular concern is the claim involving JT where there exists *prima facie* evidence of fraud and forgery. *U.S. v. Barone*, 584 F.2d 118,127 (6th Cir. 1978) (judicial process should not be used to perpetrate fraud or other wrongdoing).

Under all these circumstances, the Movant submits that it is entitled to relief, by having this case reopened, and thereafter having this Court assess whether, under Bankruptcy Rule 5010, the reappointment of a trustee is necessary. *Scharmer v. Carrollton Mfg. Co.*, 525 F.2d 95, 98-99 (6th Cir. 1975) (when new assets are discovered following the close of a bankruptcy case the proper procedure is to apply to the bankruptcy court to reopen the case pursuant to [350(b)] for administration of the assets).

If the court determines that the reappointment of a trustee is warranted, then the trustee can assess whether to pursue the above delineated claims or abandon the claims. Conversely, if a trustee is not appointed, the claims would still be scheduled and, upon the reclosing of the case, the claims would be abandoned pursuant to § 554(c). In either instance, however, a proper assessment can be made regarding the merits of the claims, whether by the trustee or, upon abandonment of the claims, by the plaintiffs having an interest in the claims. *See In re McGowan*, 95 B.R. 104, 108 (Bankr. N.D.Iowa 1988) (effect of abandonment is to leave unaltered the prepetition interests in the property).

In addition, no real prejudice will befall any potential defendant by having this case reopened. In particular, reopening the case to administer the Assets does not actually adjudicate any claims, but simply allows the claims to be administered, whether directly by a trustee or by

the abandonment of the claim under § 554(c). In this way, all potential defendants will otherwise be afforded all legal defenses which otherwise would be available.

For example, seeking leave from the Appointing Court will still be needed to pursue any claims against the Receiver. All potential defendants will also be entitled to raise affirmative defenses such as laches. At the same time, as explained in the case of *In re Dunning Bros.*:

> In the context of unscheduled property, the question of whether the case should be reopened requires only a decision whether there may be unscheduled property that could be administered by a trustee. It is not an appropriate occasion to consider or decide whether defenses could be established against the trustee. So, for example, the equitable defense of laches is not relevant to the decision whether to reopen a case, even though it may later be raised as a defense in the litigation that may follow.

410 B.R. at 877.

The Movant would also submit, and will testify to the fact, that there was no bad faith or fraud on her part, or the part of the Debtor, in not scheduling the Assets at issue. To this end, the Movant proffers that all available information was disclosed to her attorney, Grady Pettigrew, at the time this case was commenced as a Chapter 11. It should also be observed that the Debtor made a good faith effort to put forth a viable plan of reorganization, having had a disclosure statement approved by the Court. *See, e.g., In re Capuano*, 91 B.R. 715, 716 (Bankr.E.D.Pa. 1988) (liberal approach to reopening cases so long as the debtor is not guilty of fraud or intentional design and no prejudice will be suffered by the creditor).

**e.    Past Denial of the Movant's Motion to Reopen**

Having previously denied the Movant's Motion to Reopen this case, the Court may have concerns over whether the instant Motion is barred by either the law of the case doctrine and/or principles of *res judicata*. As this Court is well aware, the law of the case is a discretionary doctrine which provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Little Earth of United*

*Tribes, Inc. v. United States Dep't of Hous. & Urban Dev.*, 807 F.2d 1433, 1440–41 (8th Cir.1986). As this Court is also well aware, the doctrine of *res judicata* holds that a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. *Id*.

The Movant would submit that neither of these doctrines are applicable because the Court's order denying the Movant's prior application to Reopen this case was predicated solely on a lack of cause under § 350(b). By comparison, and by way of the instant Motion, the Movant is seeking to have this case reopened, not only for cause, but based upon the two separate and distinct grounds for reopening a case as set forth in § 350(b): (1) to administer assets; and (2) to afford the Debtor relief. As such, the Movant submits that, as it regards these separate grounds, no issue of law was actually decided; nor was there actually any judgment on the merits of these separate grounds to have this case reopened under § 350(b).

To the extent, however, that the Court disagrees with this assessment, the Movant would, for all those reasons set forth herein, ask for relief from the Court's order denying the Movant's Motion to Reopen. The Movant would make this request pursuant to Bankruptcy Rule 9024, which makes applicable Rule 60 of the Federal Rules of Civil Procedure. For this purpose, the Movant cites to (1) F.R.Civ.P. 60(b)(1), allowing relief from judgment on the basis of mistake, inadvertence, surprise and excusable neglect; and (2) F.R.Civ.P. 60(b)(1), which allows relief from judgment for any other reason that justifies relief. Concerning these grounds for relief, the Movant would respectfully call attention to the fact that she was not previously represented by legal counsel with regards to her initial application to have this case reopened. The Movant would also respectfully call attention to the fact that a 9024 motion to reopen a case is not subject to the one year limitation period prescribed in Rule 60(c).

**f.        Statute of Limitations**

At the prior hearing held on the Movant's Motion to Reopen this case, the Court, given

the passage of time, raised concerns over any applicable statutes of limitations with respect to the

potential claims at issue and their continued viability should this case be reopened. In particular,

the Court called attention to whether an avoidance action under §549 is still viable,

notwithstanding the passage of time with respect to this bankruptcy case.  Moreover, the Court's

ultimate decision to deny the Movant's prior Motion to Reopen this case was largely predicated

on temporal considerations, with the Court stating at the conclusion of the hearing:

> …given the passage of time, the operation of the Bankruptcy Code and various other
> legal principles such as laches and the final result and appealability or nonappealability,
> there's no relief available to you in this Court at this time."

Addressing first the Court's specific inquiry, concerning the application of any

limitation's period to bring an action to avoid a postpetition transfer under § 549, a matter which

directly implicates the Receiver's sale of the Condominium interest, the Movant would recognize

that the limitation's period has passed.  Specifically, § 549(d) provides a two-year limitation's

period regarding the avoidability of postpetition transfers by providing that:

> (d) An action or proceeding under this section may not be commenced after the earlier of-
>
> (1) two years after the date of the transfer sought to be avoided; or
>
> (2) the time the case is closed or dismissed.

Only a trustee (or a debtor-in-possession), however, is empowered to bring an avoidance action

under § 549. Consequently, assuming that the claims regarding the Condominium and the

Receiver are ultimately administered and then abandoned, the limitation's period of § 549(d) is

not applicable and, as explained in short order, no limitation's period precludes an action with

respect to title to the property outside of the bankruptcy forum.

Moreover, within the bankruptcy forum, the Movant submits that the claims existing regarding the unauthorized transfer of the Condominium by the Receiver are not strictly predicated on the avoidability of the transfer under § 549, but rather are predicated on claims arising from the Receiver's failure to abide by the dictates of the Bankruptcy Code itself, as well as state law. See R.C. § 2735.01, *et seq.* (governing duties and authorities of receivers under Ohio law). This is a situation entirely distinct and separate from using the limitation's periods applicable to avoidance actions.

To illustrate, it is clear, for those reasons explained, that the sale of the Condominium was in violation of the automatic stay of § 362(a), with the automatic stay specifically enjoining, among other things, "any at to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). This makes the transfer of the Condominium voidable, as an ultra vires act, based upon the operation of § 362 alone.

This distinction, between avoidance actions and claims arising for a violation of the stay, was recognized and explained in the case of *In re Schwartz*, wherein the Ninth Circuit Court of Appeals stated:

> a straightforward analysis of section 549 reveals that it is not intended to cover the same type of actions prohibited by the automatic stay nor rendered moot by section 362's voiding of all automatic stay violations. Section 549 applies to unauthorized transfers of estate property which are not otherwise prohibited by the Code. In most circumstances, section 549 applies to transfers in which the debtor is a willing participant. For example, in a transfer unrelated to any antecedent debt, the debtor may sell a portion of the estate's property to a third person.

954 F.2d at 573–74 (internal citations omitted).  The same principle applies equally with regards to the fact that sale of the Condominium did not comply with the requirements of § 363(b)(1), concerning sales of estate property outside the ordinary course, with the effect of not adhering to

the notice and hearing requirements of § 363(b)(1) being that the any sale held is rendered null and void. *In re Lavigne*, 183 B.R. 65, 70–71 (Bankr.S.D.N.Y.1995), *affirmed*, 199 B.R. 88 (S.D.N.Y.1996), *affirmed*, 114 F.3d 379 (2ⁿᵈ Cir.1997).

Under these circumstances, it is the Movant's position that, as it concerns the Condominium, no limitation's period for bringing an action to undo the transfer applies (or would be tolled) for this simple reason: The Condominium is still property of the estate and subject to the automatic stay, notwithstanding the Receiver's transfer of the property. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1221 (11ᵗʰ Cir.2001) (explaining continuing violation doctrine as an exception to any applicable statute of limitations). In this regard, were a trustee to pursue the transfer, their recourse would be through § 542, concerning turnover of estate property, which has no limitation's period. *Greene v. Schmukler (In re De Berry)*, 59 B.R. 891, 899 (Bankr.E.D.N.Y.1986).

The inapplicability of any limitation's periods would true for those other Assets for which administration is sought. In this way, and while the Movant cannot anticipate every possible issue which could arise with respect to matters concerning statutes of limitation, the Movant would call attention to these matters:

First, it is likely that the Receiver's violation of the Bankruptcy Code, including his failure to comply with the requirements of § 543, may give rise, as a person acting under color of state law, to claims under 28 U.S.C. § 1983. Actions brought, however, under § 1983 are not subject to any express statute of limitations, with courts generally applying the applicable law under which the alleged wrong was committed when assessing any limitation's period. *Board of Regents v. Tomanio*, 446 U.S. 478, 483, 100 S.Ct. 1790, 1794, 64 L.Ed.2d 440 (1980). For this

purpose, no specific statute of limitations exists regarding a § 1983 action which is predicated on a violation of the Bankruptcy Code.

Second, insofar as it concerns the defects with respect to the transfer of the Condominium, and assuming that federal law does not trump state law, Ohio law provides a 21-year statute of limitations concerning an action to recover title to real property. R.C. § 2305.04 ("An action to recover the title to or possession of real property shall be brought within twenty-one years after the cause of action accrued."). Conversely, a party claiming title to property under adverse possession must be in possession of the property for at least 21 years. *Evanich v. Bridge*, 119 Ohio St.3d 260, 2008-Ohio-3820, 893 N.E.2d 481. Also, under Ohio's marketable title act, R.C. § 5301.47, et seq. marketable title to real property requires that a person claiming marketable title have, as derived from official public records, an unbroken chain of title going back at least 40 years. R.C. § 5301.48. As a result, with less than 10 years having elapsed since the time of the unauthorized transfer of the Condominium, no limitations period would appear to preclude the Movant or a trustee, as the case may be, from maintaining an action to recover title to the Condominium.

Finally, some of the potential claims for which administration is sought sound in fraud and will be predicated on a continuing and ongoing pattern of concealment. Such allegations, if proven to be true, would toll any applicable statutes of limitations. *Campbell v. Upjohn Co.*, 676 F.2d 1122, 1126 (6th Cir.1982).

All this is not to say that certain claims, whether prosecuted by a trustee or the Movant, may not ultimately be found to be precluded by an applicable statute of limitation. However, for those reasons stated, one or more of the claims for which administration is sought are likely not precluded by any statute of limitations. Thus, reopening this case is not likely to be a futile act.

Moreover, as pointed out above, when discussing the case *of In re Dunning Bros.* and the doctrine of laches, the issue of whether any applicable statutes of limitations apply is an issue more appropriate for determination once this case has been reopened. In this way, statutes of limitations are affirmative defenses, and the party asserting the defense carries the burden to establish their applicability. *Evans v. S. Ohio Med. Ctr*. (1995), 103 Ohio App.3d 250, 254, 659 N.E.2d 326.

**g.     Conclusion**

In exercising its discretion to reopen a bankruptcy case, a bankruptcy court is to consider the equities of each case with an eye toward the principles which underlie the Bankruptcy Code. *Mendelsohn v. Ozer*, 241 B.R. 503, 506 (E.D.N.Y.1997). In this regard, a bankruptcy court's discretion to reopen case depends upon the circumstances of each individual case and with the equitable nature of all bankruptcy court proceedings. *Matter of Case*, 937 F.2d 1014 (5th Cir. 1991). In this case, the Movant puts forth that all of the following blocks are in place, warranting the reopening of this case:

(1) the existence of an asset, the Condominium, which will bring value to the estate and which, if it is not administered, will forever have a cloud cast over its title;

(2) the existence of other Assets which are of a potential value to the estate and which, whether administered by a trustee or abandoned, will confer a benefit to the Debtor and the Movant;

(3) the lack of any actual prejudice to any party if this case were to be reopened; and

(4) the lack of bad faith on the part of the Debtor and the Movant as it concerns the Assets at issue in the matter not being scheduled.

Accordingly, for all the reasons, the Movant asks the Court to Reopen this case to administer those Assets set forth herein.

s/Steven L. Diller
Steven L. Diller

## NOTICE OF MOTION

Angela Granata has filed papers with the Court to obtain an order reopening this case to administer assets.

**Your rights may be affected.**  You should read these papers carefully and discuss them with your attorney, if you have on in this bankruptcy case.  If you do not have an attorney, you may wish to consult one.  If you do not want the court to grant the relief sought in the motion, then on or before twenty one (21) days from the date set forth in the certificate of service for the motion/objection, you must file with the court a response explaining your position by mailing your response by regular U.S. Mail to the

United States Bankruptcy Court
170 North High Street
Columbus, Ohio  43215

Or your attorney must file a response using the Court's ECF system.  The Court must receive your response on or before the date above.

You must also send a copy of your response either by the (1) Court's ECF system or by (2) regular U.S. Mail to

Steven L. Diller
Movant Angela Granata's Attorney
124 E. Main Street
Van Wert, Ohio  45891

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief.

s/Steven L. Diller
Steven L. Diller

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that a copy of the foregoing Amended Motion To Reopen and Notice was sent electronically or by ordinary United States mail, as shown below, to the following listed persons, on 7th  day of March, 2016.

**ELECTRONIC SERVICE:**

Asst US Trustee (Col) ustpregion09.cb.ecf@usdoj.gov

James C. Carpenter on behalf of Interested Party JPMorgan Chase Bank, NA
james.carpenter@steptoe-johnson.com,
vince.holzhall@steptoejohnson.com;
sandy.finan@steptoe-johnson.com;
shannon.todd@steptoejohnson.com
jcarpenter3@mac.com

Stewart Hamilton Cupps on behalf of Larry J. McClatchey
scupps@cuppsgarrisonlaw.com
bbrett@cuppsgarrisonlaw.com

Brian M Gianangeli on behalf of Creditor Ohio Bureau of Workers' Compensation
bgianangeli@mifsudlaw.com

Brian M Gianangeli on behalf of Creditor Ohio Department of Job & Family Services
bgianangeli@mifsudlaw.com

Brian M Gianangeli on behalf of Creditor Ohio Department of Taxation
bgianangeli@mifsudlaw.com

Mark W Iannotta on behalf of Interested Party Reg Martin
miannotta@plunkettcooney.com,
bkennedy@plunkettcooney.com

Nora E Jones on behalf of Creditor ESS Staffing Resources, Inc.
noraejones@aol.com

Nora E Jones on behalf of Creditor Excel Temporaries, Inc.
noraejones@aol.com

Andrew M Malek on behalf of Creditor Internal Revenue Service
USAOHS.ECFColBank@usdoj.gov

Larry J. McClatchey on behalf of Trustee Larry J McClatchey
lmcclatchey@keglerbrown.com,
lzacchetti@keglerbrown.com
lmcclatchey@ecf.epiqsystems.com

Dennis J Morrison on behalf of Creditor The Huntington National Bank
dmorrison@mbbblaw.com,
m3blaw@yahoo.com

Dennis J Morrison on behalf of Creditor Unizan Bank, National Association
dmorrison@mbbblaw.com,
m3blaw@yahoo.com

Myron N Terlecky on behalf of Plaintiff Larry J. McClatchey
mnt@columbuslawyer.net,
tam@columbuslawyer.net

David M Whittaker on behalf of Creditor Weber Holdings Universal, Ltd.
dwhittaker@bricker.com

Laura M Zaremski on behalf of Interested Party Ohio Mulch Supply, Inc.
lzaremski@bricker.com,
rdelsignore@bricker.com;phesson@bricker.com

**U.S. MAIL SERVICE**:

Columbus Microfilm Inc.
753 Harmon Ave
Columbus, OH 43223-2411

Kristopher E Aungst on behalf of
U.S. Trustee Asst US Trustee (Col)
170 N High Street, Suite 200
Columbus, OH 43215

John E Decker
3980 Shattuck
Columbus, Oh 43212

John E. Decker
4110 Indianola Avenue, Unit B
Columbus, Oh 43214

Angela R Granata
1922 New Market Drive
Grove City, OH 43123

Adam J Hubble
585 South Front Street, Suite 250
Columbus, OH 43215

Grady L Pettigrew, Jr.
Law Office of Grady L. Pettigrew, Jr.
502 South Third Street
Columbus, OH 43215-5702

Bradford Eldridge
BSE PARTNERS, LLC
137 EAST STATE STREET
COLUMBUS, OH 43215